UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BARRY JOSEPH GIBSON | * | CIVIL ACTION |
| VERSUS | * | NO. 20-2381 |
| ANDREW SAUL, COMMISSIONER OF<br>SOCIAL SECURITY ADMINISTRATION | * | SECTION "H" (2) |

## REPORT AND RECOMMENDATION

Plaintiff Barry Joseph Gibson seeks judicial review pursuant to section 405(g) of the Social Security Act ("the Act") of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for disability insurance benefits ("DIB") under Title II of the Act.[1]  Pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2(B), this matter was referred to the undersigned United States Magistrate Judge for submission of Findings and Recommendations.

## I.    PROCEDURAL HISTORY

Barry Joseph Gibson is a 41-year old male with relevant work history in retail and warehouse distribution management.  *See* Administrative Record, ECF No. 8-4 (hereinafter Transcript ("Tr.")), at 288, 315–17, 325, 391; *see also id*. at 42.  He filed an application on September 19, 2017 for DIB alleging disability of depression, anxiety, and post-traumatic syndrome diagnosis, all commencing on August 11, 2017.  Tr. at 288, 391, 324–330; *see also id.* at 36–37.  Although his application did not list any physical impairment (Tr. at 324), in April 2018, he sought audiological treatment for ringing in his ears, which he said caused him to avoid social interactions.  Tr. at 651.

---

[1] 42 U.S.C. §§ 405(g), 423.

Gibson's application was denied at the agency level on January 11, 2018, indicating that Claimant's mental condition resulted in some limitations in his ability to perform work activities but was not severe enough to keep him from working.  Tr. 173–76.  Claimant requested a hearing before an Administrative Law Judge ("ALJ") on January 25, 2018.  Tr. 180–81.  That hearing occurred on September 19, 2018 before ALJ Mary Gattuso.  Tr. 51–104.  Gibson appeared and testified at the hearing and was represented by counsel, Wiebke Breuer.  *Id.*  Patricia Ehlinger, an impartial vocational expert, also appeared and testified at the hearing.  *Id.*  On December 24, 2018, the ALJ issued a decision denying Gibson's applications for benefits.  Tr. 149–62.  Upon review by the Appeals Council, the ALJ's decision was vacated on August 6, 2019, based on a finding that Claimant's established Mental Residual Functional Capacity Assessment ("MRFC") did not adequately account for his moderate limitations in adapting and managing oneself.  Tr. at 169–71.

On remand, ALJ Thomas G. Henderson held a hearing on December 11, 2019.  Tr. at 106– 32.  Gibson appeared and testified and was represented by counsel Wiebke Breuer.  *Id.*  Deborah D. Robichaux, an impartial vocational expert, also appeared and testified at the hearing.  *Id.*  On January 28, 2020, ALJ Henderson issued a decision denying Gibson's applications for benefits. Tr at 28–44.  After the Appeals Council denied review on July 6, 2020, the ALJ's decision became the final decision of the Commissioner for purposes of this Court's review.  Tr. at 1–4.  Claimant filed this matter on August 29, 2020.  ECF No. 1.  He filed a Motion for Summary Judgment on March 12, 2021 (ECF No. 10), and the Commissioner filed an opposition styled as a cross-motion for summary judgment.  ECF No. 12.

## II.    STATEMENT OF ISSUES ON APPEAL

Gibson identifies three issues for appeal:

1.    Plaintiff's condition equals social security listing 12.15:  Trauma and Stressor Related Disorders, and merits a finding of disabled at Step 3 of the

Sequential Analysis.  The ALJ Committed an error of law by failing to obtain a psychological evaluation and by failing to consult with a medical expert, as directed by the Appeals Council Order.

2. The Commissioner did not apply the correct legal standard when assessing Plaintiff's Residual Functional Capacity and that finding is not supported by substantial evidence.

3. The Commissioner failed to reconcile significant inconsistencies in the record by not addressing Plaintiff's finding of 100% service connection and unemployability as assessed by the Veterans Administration.

*See* Tr. 10-3.

## III. <u>ALJ's FINDINGS RELEVANT TO ISSUES ON APPEAL</u>

The ALJ made the following relevant findings in his ruling:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.

2. The claimant has not engaged in substantial gainful activity since August 11, 2017, the alleged onset date (20 CFR 404.1571 et seq.).

3. The claimant has the following severe impairments: post-traumatic stress disorder (PTSD) and depression (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: limited to moderate noise environments (i.e., office noise), avoid concentrated exposure to work near hazards; can understand, remember and carry out simple, routine and repetitive tasks in an uncrowded work setting with minimal variation; no fast paced production or rigid quotas; work primarily with things rather than people (i.e., no close coordination with co-workers and supervisors, no ongoing public interaction).

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on March 25, 1980 and was 37 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 11, 2017, through the date of this decision (20 CFR 404.1520(g)).

Tr. 34, 36, 42, 43.

## IV.    ANALYSIS

### A.    Standard of Review

The role of this Court on judicial review under 42 U.S.C. § 405(g) is to determine whether the decision is supported by substantial evidence on the record as a whole and whether the proper legal standards are applied in evaluating the evidence.[2]    Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it is more than a scintilla but less than a preponderance.[3]    A finding of "no substantial evidence" is appropriate only if no credible evidentiary choices or medical findings support the decision.[4]    The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try any issues *de novo*.[5]

---

[2] *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citing *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)); *Richard ex rel Z.N.F. v. Astrue*, 480 F. App'x 773, 776 (5th Cir. 2012) (citation omitted); *Stringer v. Astrue*, 465 F. App'x 361, 363 (5th Cir. 2012) (citing *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002)).
[3] *Richardson v. Perales*, 402 U.S. 389, 401 (5th Cir. 1971) (citation omitted); *Richard ex rel Z.N.F.*, 480 F. App'x at 776 (citing *Perez*, 415 F.3d at 461).
[4] *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (citations omitted).
[5] *Halterman ex rel Halterman v. Colvin,* 544 F. App'x 358, 360 (5th Cir. 2013) (citing *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

4

This standard precludes the court from reweighing the evidence or substituting its judgment for that of the administrative fact finder.[6]

The court must affirm the Commissioner's determination to deny benefits unless it finds that the ALJ applied the incorrect legal standard or that the ALJ's determination is not supported by substantial evidence.[7]  The Court weighs four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.[8]

A "physical or mental impairment" is "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."[9]  To qualify as a disability, the impairment must be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.[10]  The mere presence of an impairment, however, is not enough to establish that one is suffering from a disability.  Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity."[11]  Thus, to be considered disabled and eligible for benefits,[12] the Claimant must prove his disability by establishing a physical or mental

---

[6] *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000) (citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)); *see also Cook v. Heckler,* 750 F.2d 391, 392 (5th Cir. 1985).

[7] *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

[8] *Chrisner v. Astrue,* 249 F. App'x 354, 356 (5th Cir. 2007) (quoting *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991)); *accord Perez*, 415 F.3d at 462 (citation omitted).

[9] 42 U.S.C. § 423(d)(3).

[10] *Id.* § 423(d)(1); *see also Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citations omitted).

[11] *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986)) (internal quotations and emphasis omitted).

[12] The relevant law and regulations governing claims for DIB and supplemental security income are identical. *Carmon v. Barnhar*t, 81 F. App'x 410, 411 n.1 (3d Cir. 2003) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)).

impairment lasting at least twelve months that prevents him from engaging in substantial gainful activity.[13]

The Commissioner has promulgated regulations that provide procedures for evaluating disability claims.[14] "In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in [A]ppendix 1 of the [S]ocial [S]ecurity [R]egulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity."[15] The claimant has the burden of proof under the first four steps; if the claimant successfully carries this burden, the burden shifts to the Commissioner at the fifth step to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing.[16] When the Commissioner shows that the claimant is capable of engaging in alternative employment, "the ultimate burden of persuasion shifts back to the claimant."[17]

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. At Step 3, the ALJ must identify every Listing that could apply to the claimant.[18] However, "[p]rocedural perfection in administrative hearings is not required," and a reviewing court may only vacate a judgment if the "substantial rights" of a party have been affected.[19] With respect to a given Listing, a claimant's substantial rights are affected where the claimant "would

---

[13] 42 U.S.C. § 1382c(a)(3)(A); *see also* 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A).

[14] 20 C.F.R. §§ 404.1501–1599 & Appendices, §§ 416.901–998.

[15] *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007).

[16] *Id.* at 448.

[17] *Plaisance v. Astrue*, No. 08-5134, 2009 WL 4161086, at *2 (E.D. La. Nov. 23, 2009) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Kraemer v. Sullivan*, 885 F.2d 206, 208 (5th Cir. 1989)).

[18] *Audler*, 501 F.3d at 448 ("The ALJ did not identify the listed impairment for which Audler's symptoms fails to qualify, nor did she provide any explanation as to how she reached the conclusion that Audler's symptoms are insufficiently severe to meet any listed impairment. Such a bare conclusion is beyond meaningful judicial review.") (internal quotation omitted).

[19] *Mays v. Bowen*, 837 F.2d 1362, 1362–63 (5th Cir. 1988).

6

appear to have met [his] burden of demonstrating that [he] meets the Listing requirements" for a given Listing.[20]

**B.  Factual Background**

Claimant testified that he is 39 years old and has a college degree (Bachelor's in Business). Tr. at 109.  He served as a Sergeant in the Army in the engineering division/supply which included duty in Afghanistan from July 7, 2003–July 7, 2004.  Tr.  at 121; 609.  Claimant testified that, although the engineering battalion was not an infantry unit, he saw combat.  Tr. at 121–122.  After completing his military service in 2005, Claimant did one year with the National Guard at home and was honorably discharged in 2006.  Tr.  at 78.

In 2005, he began to work with Cardinal Health and was terminated in 2010.  Tr.  at 339; *see also* 63–64, 78.  He then worked at Midwest Medical Supply for nine months before being terminated.  Tr.  at 339; *see also* 63–64, 79–80.  While working as warehouse distribution manager, he supervised seven employees.  *Id.* at 111.  He also worked at Racetrac from August 2014– February 2017.  Tr.  at 339; *see also* 63–64, 79–80.  Claimant worked as an assistant manager at Sherwin Williams for three months but did not supervise anyone.  Tr. at 339, 110–11.  He worked as a District Manager with Cricket Wireless from April 2017 through August 2017.  Tr. at 339.

Claimant lives with his wife and six-year old daughter as well as his in-laws.  Tr. at 111.  He spends the day watching TV, reading, and trying to make sure that everything is okay at home (i.e., checking the doors and windows and doing perimeter checks).  Tr. at 112–13.  He cleans the house and has a driver's license but could not recall that last time he drove.  Tr. at 113.[21]  Claimant

---

[20] *Audler*, 501 F.3d at 449; *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990) (stating claimant bears burden at step three to demonstrate that he meets a given Listing).

[21]  During the earlier September 19, 2018 hearing, Claimant testified that he drove 3-4 times a week and picked up his wife from work his over the summer.  Tr. at 88.  He also testified that he exercises in the garage during the day and does some chores around the house (e.g., wash clothes, does the weed-eating in the yard).  *Id.* at 89-90.

testified that he does not socialize, but does talk occasionally to a friend from the military.  Tr. at 113.  He testified that he has no desire to interact with others from feeling depressed.  Tr. at 117–18.  He only feels safe at home.  Tr. at 120.  He worries about the safety of his wife and child when they are at work and school, which causes him to telephone his wife hourly and talk with her continuously on her drive home.  Tr. at 123.

Claimant testified that he is service-connected with the VA primarily related to his PTSD with a 100% rating[22] and has 40% hearing loss in his right ear with a diagnosis of tinnitus.  Tr. at 114–15, 116.  His tinnitus causes excessive ringing in his ears and affects his ability to sleep.  Tr. at 115.  He associates his anxiety and depression to his PTSD as well as his nightmares, sleep paralysis, aggression and low frustration tolerance.  Tr. at 115–16, 119.  His nightmares wake him up usually three times a week, and a good night of sleep will be five hours.  Tr. at 115–16.  Plaintiff takes medication for his PTSD and his anxiety and depression as well as medication to address side effects of those medications.  Tr. at 124.  Claimant testified that he does not feel that the medications are helping and has recently discussed changing his medication regime.  *Id.*

Plaintiff's VA Medical Clinic ("VA") treatment record reflects a report of depression in September 2015, but no evidence of treatment until August 2017 when he presented for mental health counseling.  Tr. at 503–09.  Claimant testified that he receives mental health treatment through the VA, which is outsourced.  He typically receives counseling from Dr. Danny Roussel.  Tr. at 114, 443–47, 632–39, 720–26.  He presented to JeffCare in March 2018 and sees psychiatrist Dr. Megan Dauenhauer or Charles Mylie, licensed social worker, through JeffCare.  Tr. at 624–26, 641–46, 654–61, 701–04.

---

[22] Although Claimant indicates he has a 100% disability rating, his combined service-connected disability evaluation reflects a 70%, but he is paid at 100% because his disability is due solely to his service-connected disability.  Tr. at 405–06; *see also* Tr. at 9, 486, 541, 593.

### C.  **Vocational Expert Testimony**

The vocational expert, Deborah Robichaux, testified at the hearing.  In exploring available work in the national economy, the ALJ posed a hypothetical based on a young person, college educated, with past work as described as claimant's, with no exertional limitations but limited to a work environment with moderate/office noise and must avoid concentrated exposure to hazards, but that can understand, remember, carry out simple, routine, repetitive tasks in an uncrowded work setting and further limited to work that would not require fast-paced production or rigid quotas and a need to work with things rather than people (i.e., no close coordination with coworkers or supervisors) and no interaction with the public, in a routine work setting with minimal variations.  Tr. at 128–29.  In response, Ms. Robichaux testified that while Claimant's past work would not accommodate those limitations, there was other work that would, including routing clerk (467,589 positions), which is classified as light duty with a specific vocational preparation ("SVP") of 2, bagger/garment (89,449 positions), which is classified as a light job with an SVP of 1, and counter supply worker (173,822 positions), which is classified as a medium occupation with an SVP of 2.  Tr. at 129–30.  Adding to the hypothetical, the ALJ asked whether, if the individual had difficulty concentrating and staying on task secondary to psychological problems leading him to be off task up to 20 percent of the workday, Ms. Robichaux testified that the jobs she identified could not accommodate that limitation.   Tr. at 130.

Plaintiff's counsel then asked Ms. Robichaux to further assume that the individual had marked difficulty (i.e., two-thirds of the day) responding adequately and performing routine workplace changes and also had marked difficulty (i.e., two-thirds of the day) interacting with coworkers, supervisors or the public.  In response, Ms. Robichaux responded that an individual off-task as specified would not be able to sustain a job due to those behaviors.  Tr. at 130–31.

### D.  **Medical Evidence**

I have reviewed the medical records and the ALJ's summary of the medical evidence. Tr. 34–41, 441–751; *see also id.* at 9–27, 315–90.  The ALJ's summary of the medical evidence is substantially correct and is incorporated herein by reference, with the modifications, corrections and highlights noted below.

### E.  **Plaintiff's Appeal**

Claimant raises no objection to the ALJ's findings at Steps 1 and 2 of the 5-Step sequential analysis.  ECF No. 10-3, at 9.  The ALJ determined that Plaintiff meets the insured status requirements through December 31, 2020, and that he has not engaged in substantial gainful activity since August 11, 2017.  Tr. at 34.  At Step 2, the ALJ found that Claimant's post-traumatic stress disorder and depression constitute severe impairments (20 C.F.R. § 404.1520(c)),[23] but his tinnitus has not resulted in any limitation on the ability to do basic work activities and thus is not severe under 20 C.F.R. § 416.921.  *Id.*

### 1.  **The ALJ's Credibility Determinations Will Not Be Disturbed**

Initially, Claimant implies that the ALJ gave insufficient weight to his hearing testimony regarding his limitations.  *See* ECF No. 10-3, at 8.  When a claimant gives subjective testimony, the ALJ has the responsibility to evaluate the claimant's credibility.[24]  To determine credibility, the ALJ must review the entire record and express specific reasons supported by evidence in the case record for his credibility findings, but the ALJ does not have to discuss every guiding regulatory factor.[25]  In this case, the ALJ found that "claimant's statements concerning the

---

[23] *See also id.* § 416.920(c)).
[24] *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (citations omitted).
[25] *Giles v. Astrue*, 433 F. App'x 241, 249 (5th Cir. 2011) (citing *Clay v. Barnhart*, 214 F. App'x 479 (5th Cir. 2007) ("The ALJ is not required to mechanically follow every guiding regulatory factor in articulating reasons for denying claims or weighing credibility.")).

intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." Tr. at 40.

If the ALJ explains his credibility findings and substantial evidence supports those findings, the Court must affirm the ALJ's credibility assessment.[26] Here, the ALJ provided detailed reasons for discounting Gibson's testimony regarding his limitations. *See, e.g.*, Tr. at 40–41. Because the ALJ is best suited to make a credibility determination, the Court gives considerable deference to the ALJ's findings if substantial evidence supports those findings.[27] The ALJ's credibility determinations in this case will not be disturbed on judicial review.

**2. Alleged Error #1: Plaintiff's condition equals social security listing 12.15: Trauma and Stressor Related Disorders, and merits a finding of disabled at Step 3 of the Sequential Analysis. The ALJ committed an error of law by failing to obtain a psychological evaluation and by failing to consult with a medical expert, as directed by the Appeals' Council Order.**

The Social Security Regulations "Listing of Impairments" is comprised of impairments to fifteen categories that are severe enough to preclude a person from performing gainful activity.[28] Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results.[29] The purpose of the Listings is to streamline the decision-making process "by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background."[30] Conditions described in the listings are considered so severe that the conditions create an irrebuttable presumption of disability.[31]

---

[26] *Undheim v. Barnhart*, 214 F. App'x 448, 450–51 (5th Cir. 2007).
[27] *McKnight v. Astrue*, 340 F. App'x 176, 181 (5th Cir. 2009) (citation omitted) ("Credibility determinations are generally entitled to great deference . . . .").
[28] *Sullivan v. Zebley*, 493 U.S. 521, 529-30 n.6 (1990).
[29] *Id.* at 530.
[30] *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987).
[31] *Sullivan*, 493 U.S. at 532 ("[F]or adults, the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary . . . That is, if an adult is not actually working and his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without a determination

When assessing a claim for disability benefits, "[i]n the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work."[32]  For a claimant to demonstrate that his disorder matches a Listing, he must meet all of the specified medical criteria for that listing.[33]  A claimant who does not meet *all* of the specified medical criteria may be able to show that his condition is medically equivalent to a Listing.[34]  For example, when a claimant does not exhibit all of the criteria for a Listing or when a claimant exhibits all of the criteria but one of them is not with the severity specified, a claimant's impairment (or combination of impairments) may nevertheless be found "equivalent" to a Listing if the claimant shows that his findings are of equal medical significance to a Listed impairment and of the required duration.[35]  If the impairments match or are equivalent to one of the listed impairments, the claimant is presumed to be disabled and qualifies for benefits without further inquiry.[36]

a.  Whether Plaintiff's condition meets Listing 12.15

At the inception of the December 11, 2019 hearing and in his Motion for Summary Judgment, Claimant argued that his condition met Listing 12.15: PTSD trauma.  *See* Tr. 108–09; ECF No. 10-3, at 10–13;.  Specifically, he asserted that he has marked limitations in (a) interacting with others and (b) managing or adapting oneself.  Tr. at 108–09; ECF No. 10-3, at 10–13.  At the third step of the sequential evaluation, the ALJ considered both Listings 12.04 (Depressive, bipolar and related disorders) and 12.15 (trauma- and stressor-related disorders).  The ALJ found,

---

whether he actually can perform his own prior work or other work.") (citing *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987)).

[32] *Sullivan*, 493 U.S. 525.

[33] *Id.* at 530–31; *see also Whitehead v. Colvin*, 820 F.3d 776, 781 (5th Cir. 2016) (citation omitted).

[34] *Sullivan*, 493 U.S. at 531 (citing 20 C.F.R. § 416.926(a)); SSR 17-2p (Mar. 27, 2017).

[35] *Id.* (citing 20 C.F.R. § 416.926(a)); *see also* 20 C.F.R. § 404.1526 and SSR 17-2p (Mar. 27, 2017).

[36] 20 C.F.R. §§ 404.1525(a), 404.1526.

however, that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of either listing.  Tr. 34–36.

The severity of "mental disorders" is measured using medical criteria ("paragraph A"), functional criteria ("paragraph B"), and an analysis of "serious and persistent mental disorders" ("paragraph C").[37]  Listing 12.04 (Depressive, bipolar and related disorders) and Listing 12.15 (Trauma- and stressor-related disorders) each require that Plaintiff's impairment satisfy the criteria of paragraphs A **and** either B or C.  Paragraphs A of the two Listings differ, but paragraphs B and C are the same.  Section 12.04(A) (depressive disorder) requires, in pertinent part:

> A.  Medical documentation of the requirements of paragraph 1 or 2:
>   1.  Depressive disorder, characterized by five or more of the following:
>       b.  Depressed mood;
>       c.  Diminished interest in almost all activities;
>       d.  Appetite disturbance with change in weight;
>       e.  Sleep disturbance;
>       f.  Observable psychomotor agitation or retardation;
>       g.  Decreased energy;
>       h.  Feelings of guilt or worthlessness;
>       i.  Difficulty concentrating or thinking; or
>       j.  Thoughts of death or suicide.
>   2.  Bipolar disorder . . . .

Listing 12.15(A) (trauma- and stressor-related disorders) requires:

> A. Medical documentation of all of the following:
>   1. Exposure to actual or threatened death, serious injury, or violence;
>   2. Subsequent involuntary re-experiencing of the traumatic event (for example, intrusive memories, dreams, or flashbacks);
>   3. Avoidance of external reminders of the event;
>   4. Disturbance in mood and behavior; and
>   5. Increases in arousal and reactivity (for example, exaggerated startle response, sleep disturbance).

Both Listing 12.04 and 12.15 require that the claimant satisfy paragraph A and either paragraph B or C.  Paragraphs B and C in each Listing provide:

---

[37] 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(a)–(c).

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
    1. Understand, remember, or apply information.
    2. Interact with others.
    3. Concentrate, persist, or maintain pace.
    4. Adapt or manage oneself.

OR

C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
    1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder; and
    2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.04, 12.15 (internal citations omitted).

Based on the medical and non-medical evidence, the individual's limitation in each area is rated on a five-point scale: (1) none; (2) mild; (3) moderate; (4) marked; and (5) extreme.  20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00F(2), (3)(a) ("Clinicians may use these terms to characterize your medical condition.  However, these terms will not always be the same as the degree of your limitation in a paragraph B area of mental functioning.").  Moderate limitation means that the individual's functioning in the area is fair.  *Id.* 12.00F(2)(c).  For marked, the individual must be seriously limited, and, for extreme, the individual must be unable to function in the area at all. *Id.* 12.00F(2)(d) –(e).

Limitation of an area of mental functioning reflects the overall degree to which [the individual's] mental disorder interferes with that area. The degree of limitation is how [the SSA] document[s] [its] assessment of [the individual's] limitation when using the area of mental functioning independently, appropriately, effectively, and on a sustained basis. It does not necessarily reflect a specific type or number of activities, including activities of daily living, that [the individual has] difficulty doing. In addition, no single piece of information . . . can establish the degree of limitation of an area of mental functioning.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00F(3)(d).

14

To show medical equivalence, Plaintiff's PTSD must be "at least equal in severity and duration to the criteria of [the Listing]." 20 C.F.R. § 404.1526(a).  When the individual does not exhibit one or more of the required findings or one or more of the findings does not meet the required severity, the individual's impairment is medically equivalent to the Listing only if other findings related to that impairment are "at least of equal medical significance to the required criteria." 20 C.F.R. § 404.1526(b)(1)(ii).  At the hearing decision level, the ALJ is responsible for deciding whether an impairment is medically equivalent to a Listing.  20 C.F.R. § 404.1526(e)(3).

In this case, the ALJ analyzed in depth each of the four paragraph B areas of mental functioning and cited to particular entries in the record that belie Plaintiff's contention that he suffers from anything more severe than moderate limitations in (a) interacting with others; (b) concentration, persistence, or pace; and (c) adapting or managing oneself and a mild limitation in understanding, remembering or applying information:

> In understanding, remembering or applying information, the claimant has a ***mild*** limitation. In the function report, the claimant was reported as able to care for his personal needs independently, to perform simple household chores and to perform yard work. The claimant is able to drive and to manage finances with some decreased concentration and focus on money.  His hobbies include watching football and he is able to attend medical appointments on a regular basis and participate in his treatment plan. At the consultative examination, Dr. Powanda opined that the claimant has only mild difficulty remembering and following through with multi-step verbal directions with the need to refer to written directions. After review of the evidence of record, the undersigned finds the claimant's mental impairments do not impose any moderate difficulties. Therefore, the undersigned finds the record supports only mild limitation in understanding, remembering or applying information.
>
> In interacting with others, the claimant has a ***moderate*** limitation. In the function report, the claimant acknowledged that he has difficulty socializing. At the consultative examination, the claimant was noted to have impaired social skills. However, subsequent treatment notes from Jeff  Care indicated that after the initiation of psychotropic medications, the claimant was observe as calm, relaxed, cooperative, engaging and friendly. His mood was noted as calm and pleasant. Progress notes showed that after 6 months of medication management, the claimant acknowledged finding joy spending time with his family. After review of the evidence of record, the undersigned finds the claimant's mental impairments do not

impose any marked or extreme difficulties. Therefore, the undersigned finds the record supports only moderate limitation in interacting with others.

        With regard to concentrating, persisting or maintaining pace, the claimant has a ***moderate*** limitation. In the function report, the claimant was reported as able to care for his personal needs independently, to perform simple household chores and to perform yard work. The claimant is able to drive and to manage finances. His hobbies include watching football. At the consultative examination, the claimant was observed as not exhibiting any evidence of impulsiveness, distraction or frustration. Dr. Powanda opined that the claimant has mild to possibly at times moderate difficulty maintaining appropriate sustained attention, pace, and persistence for 2-hour time periods. After review of the evidence of record, the undersigned finds the claimant's mental impairments do not impose any marked or extreme difficulties. Therefore, the undersigned finds the record supports only moderate limitation in concentrating, persisting or maintaining pace.

        As for adapting or managing oneself, the claimant has experienced a ***moderate*** limitation. In the function report, the claimant was reported as able to care for his personal needs independently, to perform simple household chores and to perform yard work. The claimant is able to drive and to manage finances with some decreased concentration and focus on money. His hobbies include watching football and he is able to attend medical appointments on a regular basis and participate in his treatment plan. After review of the evidence of record, the undersigned finds the claimant's mental impairments do not impose any marked or extreme difficulties. Therefore, the undersigned finds the record supports only moderate limitation in adapting or managing.

Tr. at 35.  After finding that Claimant failed to satisfy paragraph B, the ALJ addressed whether Claimant satisfied paragraph C, finding "there is not a medically documented history of the existence of ***depression and PTSD*** over a period of at least 2 years, that is accompanied by evidence that the claimant relies, on an ongoing basis, upon medical treatment, mental health therapy, psychosocial supports, or a highly structured settings, to diminish the symptoms and signs of the mental disorders and despite the claimant's diminished symptoms and signs, that the claimant has achieved only marginal adjustment."  Tr. at 36.

Plaintiff essentially disagrees with the ALJ's finding and seeks to have this Court re-weigh the evidence.  However, the ALJ is solely responsible for deciding whether a listing is met or equaled.  SSR 96-6p, 1996 WL 374180, at 3.  Whether an impairment is equivalent in severity to the requirements of a listed impairment requires a judgment that the medical findings equal a level

of severity that prevents a person from performing any gainful activity—an issue reserved to the Commissioner. *Id.* at *4. In his decision, the ALJ conducted the detailed analysis required by 20 C.F.R. § 404.1527(c).[38] Tr. at 41–42; *see also* 37–40. Where the treating physician's evidence is conclusory, unsupported by medically accepted clinical, laboratory or diagnostic techniques, or is otherwise unsupported by the record, the ALJ has good cause to reject or discount the weight of a treating physician relative to other experts.[39] The ALJ's discussion and reasoning reflects that he considered these factors before discounting the opinions of Dr. Powanda and Dr. Roussel. Tr. at 36–42. It is not this Court's role to reweigh the evidence or second guess the ALJ's assigned weight.[40]

Contrary to Plaintiff's contentions, the medical records did not evidence "a serious and persistent disorder over a period of at least 2 years with evidence of both . . . [m]edical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of his mental disorder . . . [or] . . . [m]arginal adjustment." Rather, the medical records reflected sporadic and intermittent treatment with no-show appointments and long periods of time without any visits, contacts or recorded treatment,[41] as noted by the ALJ (*see* Tr. 39–40).

---

[38] *Qualls v. Astrue*, 339 F. App'x 461, 465 (5th Cir. 2009) (quoting Newton, 209 F.3d at 453).

[39] *Athena G. v. Kilolo Kijakazi*, No. 20-51, 2021 WL 3729033, at *7 (N.D. Tex. Aug. 2, 2021) (citations omitted), *R & R adopted* 2021 WL 3726741 (N.D. Tex. Aug. 23, 2021).

[40] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) (holding that a court "may neither reweigh the evidence in the record nor substitute [its] judgment . . . ") (citation omitted).

[41] *See, e.g.,* VA visits (Tr. at 454-55, 503 & 573 (reflecting two mental health encounters (9/17/2015 and 8/31/2017) at VA between October 2014 through December 2017)); SE Louisiana Veterans HCS (Tr. at 27 (describing consult placed in late 2019 but Claimant did not show and after several re-scheduling attempts were made, the consult was discontinued)); Dr. Roussel visits, 444 (scratch off indicating no show May 2015), 446 (writing no show in November 2015), 446-47 (noting three month gap until March 2016 appointment followed by six month gap before September 2016 appointment), 637-39 and 721-22 (showing sporadic appointments between 2016-2019), 690 (indicating on no medications on progress note), 736-37 (noting no show despite repeated attempts to schedule).

The ALJ properly evaluated Claimant's impairments under the relevant medical listings and, with regard to his mental impairments, performed the required paragraphs B and C analyses under 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.03; 20 C.F.R. § 404.1520a. Tr. at 16–18. The ALJ properly assessed whether Claimant's mental impairment resulted in at least one "extreme" or two "marked" limitations in the relevant four broad functional areas. The ALJ's finding that Plaintiff has mild and moderate, rather than marked or severe, limitations and thus did not have any impairment or combination of impairments that meets or medically equals the severity of the Listing impairments contained in 20 C.F.R. Pt. 404, Subpt. P, App. 1, is supported by substantial evidence.

b.    Whether the ALJ was required to obtain an evaluation or medical consultation

As part of this statement of error, Plaintiff contends that the ALJ committed an error of law when he failed to obtain a psychological evaluation or consult with a medical expert. Plaintiff contends that the Appeals Council's Order directed the ALJ to obtain same. ECF No. 10-3, at 10, 12–13. Initially, a consultative examination is required only if the record could not support a disability decision. 20 C.F.R. § 416.919a(b). If the record contains enough consistent information for the ALJ to make a disability decision, then an examination is unnecessary.[42]

In this case, the Appeals Council's Order provides, in pertinent part:

Upon remand, the Administrative Law Judge will:

● *If warranted by the expanded record*, obtain additional evidence concerning the claimant's medically determinable impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512). *The additional evidence may include, if warranted and available,* a consultative examination with psychological testing and medical source opinions about what the claimant can still do despite the impairments.

---

[42] *Hardman v. Colvin*, 820 F.3d 142, 148 (5th Cir. 2016).

● Further, *if necessary,* obtain evidence from a medical expert related to the nature and severity of and functional limitations resulting from the claimant's medically determinable impairments (20 CFR 404.1513a(b)(2)).

Tr. at 170 (emphasis added).  At no point does the Appeals Council require or direct the ALJ to obtain additional medical expert opinion or psychological evaluation.  The fact that the ALJ found the opinions of Danny Roussel, Ph.D. and Christine Powanda, Ph.D. to be unpersuasive, inconsistent with the overall record, and based on Plaintiff's subjective reports does not mandate that additional evidence be obtained.  Tr. at 41–42.  Nor did the ALJ's finding that their opinions were inconsistent with the record require additional evaluation; rather, that determination required the ALJ to undertake the task of resolving the inconsistencies,[43] which is what the ALJ did.

Further, the ALJ found persuasive and cited to the mental functional capacity assessment completed by Joseph Kahler, Ph.D.  Tr. at 40–41.  After assessment and review of the medical evidence, Dr. Kahler concluded that Plaintiff retained the mental capacity for low stress work with few social demands.  *Id.*; *see also* Tr. 134–142 (finding no more than mild to moderate work-related mental limitations).  The ALJ did, however, include additional limitations based on the additional medical evidence received in the course of developing the record for the administrative hearing level.  *See* Tr. at 41.

Contrary to Plaintiff's assertion, SSR 17-2p, 2017 WL 3928306 (Mar. 27, 2017) does not require the ALJ in this case to forward Plaintiff's file to a medical consultant for further evaluation in this case.  *See* ECF No. 10-3, at 13.  Nor did the ALJ substitute his judgment for that of the medical professionals:  "It is the ALJ's responsibility to determine a claimant's [residual functional capacity], and such an assessment is not a medical opinion."[44]  Indeed, the regulations and case law make clear that the residual functional capacity determination "is the sole responsibility of the

---

[43] *Garcia v. Colvin,* 622 F. App'x 405, 408–09 (5th Cir. 2015).
[44] *Joseph-Jack v. Barnhart*, 80 F. App'x 317, 318 (5th Cir. 2003) (citing 20 C.F.R. §§ 416.946, 416.927(e)).

ALJ."[45]  The ALJ is entitled to determine the credibility of medical experts and lay witnesses, and to weigh their opinions accordingly.[46]  The record in this case reflects that the ALJ relied upon the medical information of record to determine Plaintiff's residual functional capacity for work. Plaintiff cannot mischaracterize the ALJ's performance of his task of interpreting medical evidence to determine capacity as the ALJ substituting his opinion for the medical provider or justify Plaintiff's demand for additional medical evidence.

### 3. Alleged Error #2: The Commissioner did not apply the correct legal standard when assessing Plaintiff's Residual Functional Capacity and that finding is not supported by substantial evidence.

If a claimant cannot establish that he meets or has the medical equivalent of a Listing, in which case disability would be presumed, the ALJ must then determine whether he is capable of performing other work available in the national economy, considering his residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines at 20 C.F.R. Part 404, Subpart P, Appendix 2.[47]  Before turning to the final two steps of the analysis, the ALJ determined that Gibson had the following RFC:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations:  limited to moderate noise environments (i.e., office noise), avoid concentrated exposure to work near hazards; can understand, remember and carry out simple, routine and repetitive tasks in an uncrowded work setting with minimal variation; no fast paced production or rigid quotas; work primarily with things rather than people (i.e., no close coordination with co-workers and supervisors, no ongoing public interaction).

Tr. at 36.  Plaintiff contends that the ALJ failed to apply the correct legal standard when assessing his RFC, and that he lacked substantial evidence for this finding.  ECF No. 10-3, at 13–14.

---

[45] *Taylor v. Astrue*, 706 F.3d 600, 602–03 (5th Cir. 2012) (citing *Ripley v. Chater*, 67 F.3d 552,  557 (5th Cir. 1995)); *see also Jack v. Astrue*, 426 F. App'x 243, 244–45 (5th Cir. 2011) (finding the medical evidence does not support the Plaintiff's contention that the ALJ substituted his opinion regarding Plaintiff's need for medication).
[46] *Williams v. Colvin*, 575 F. App'x 350, 354 (5th Cir. 2014) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1984)).
[47] *Boyd v. Apfel*, 239 F.3d 698, 705–06 (5th Cir. 2001); 20 CFR §§ 404.1520(e)(g), 404.1560(c)).

The RFC is the most a claimant can do despite their limitations. 20 C.F.R. § 416.945(a)(1). It is an administrative assessment made by the ALJ based on the totality of the evidence in the record. 20 C.F.R. §§ 416.945(a)-(e); 416.946. When making the assessment, the ALJ should consider medical assessments, descriptions by physicians, descriptions by the claimant, and any other evidence that shows any limitations on the claimant's ability to work.[48]  The ALJ is to resolve any conflicts in the medical evidence after evaluating the record.[49]  In assessing RFC, "the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule)." SSR 96-8p, 1996 WL 374184 (July 2, 1996) (footnote omitted). The issue of whether the claimant can maintain employment for a significant period of time will be subsumed in the analysis regarding the claimant's ability to obtain employment.[50]

In arguing that the ALJ lacked substantial evidence for his RFC finding, Plaintiff relies on statements of Dr. Powanda and Dr. Roussel to argue that the ALJ failed to take account those providers' noted limitations. *See* ECF No. 10-3, at 13–15. Of course, the ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record.[51]  Further, contrary to Plaintiff's argument, the medical record does not "consistently document unrelieved, severe mental impairment and significant limitations" that would require the ALJ to have concluded that Plaintiff had an inability to persist, concentrate or maintain pace. *See* ECF No. 10-3, at 14–15. Rather, as explicitly noted by the ALJ, Dr. Powanda's opinion that Plaintiff had "significant difficulty coping with life's stressors; significant difficulty adapting to changes with

---

[48] *Hollis v. Bowen*, 837 F.2d 1378, 1386–87 (5th Cir. 1988 (citation omitted)).
[49] *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citation omitted).
[50] *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003) ("An ALJ may explore [whether claimant can hold a job for significant period of time] in connection with the claimant's physical diagnosis as well as in the ability-to-work determination."); *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (citations omitted) (stating that the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion).
[51] *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).

anger control, difficulty coping and interpersonal problems negatively impacting interpersonal relationships at home and on the job" was after a one time evaluation and based on subjective reports made by the claimant that were inconsistent with and unsupported by the medical evidence of record. Tr. at 41. Likewise, the ALJ explained that Dr. Roussel's opinion that Claimant was severely disabled and unemployable was inconsistent with his own treating records, failed to show any objective clinical evidence to support these limitations, and inconsistent with the medical evidence. Tr. at 41–42.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. Although Plaintiff disagrees with the ALJ's findings, the ALJ did incorporate certain limitations into his RFC analysis to account for Claimant's mental limitations (e.g., office noise, simple, routine, repetitive tasks, uncrowded work setting, not fast-paced production or rigid quotas, the need to work with things rather than people, no close coordination with coworkers and supervisors, no interaction with the public and routine work setting with minimal variations). Tr. at 128–29. Plaintiff's disagreement with that finding, when that finding is supported by substantial evidence, is insufficient to establish error. Moreover, this Court may not reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner, even if the evidence weighs against the Commissioner's decision.[52]

The ALJ applied the correct legal standard and his finding that, considering Claimant's age, education, work experience, and residual functional capacity, he is capable of making a successful adjustment to other work that exists in significant numbers in the national economy[53]

---

[52] *Halterman ex rel Halterman v. Colvin,* 544 F. App'x 358, 360 (5th Cir. 2013) (citing *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).; *Stringer v. Astrue,* 465 F. App'x 361, 364 (5th Cir. 2012)..
[53] Tr. at 43.

is supported by substantial evidence.  He did not err in refusing to incorporate opinions of a medical providers that he rejected as being inconsistent with other objective medical evidence.

3. **Alleged Error #3: The Commissioner failed to reconcile significant inconsistencies in the record by not addressing Plaintiff's finding of 100% service connection and unemployability as assessed by the Veterans Administration.**

The Department of Veterans Affairs ("VA") and the SSA are governmental agencies that separately administer programs to provide disability benefits.[54]  The programs employ different criteria in analyzing disability and their determination process is fundamentally different.[55]  For instance, the VA does not make a function-by-function assessment of an individual's capabilities or determine whether his ability to perform either past relevant work or other work that exists in significant numbers in the national economy; instead, it compensates for conditions incurred while in the service.[56]

Even though a disability determination by another governmental agency is not binding on the SSA, historically the ALJ was required to consider other agency's determinations and accord them a certain amount of weight.[57]  The ALJ could discount another agency's decision (such as a VA rating) if the opinion adequately explained valid reasons for doing so,[58] but the failure to consider another agency's disability rating and explain the reasons for discounting it would

---

[54] *Compare* 38 C.F.R. §§ 4.1-4.31 (explaining the VA's procedures for rating disabilities), *with* 20 C.F.R. §§ 404.1501-404.1599 (explaining the SSA's procedures for determining disability).

[55] *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).

[56] *Compare* 20 C.F.R. § 416.925(a), *with* 20 C.F.R. § 4.1 ("This rating schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service.")

[57] *Chmabliss*, 269 F.3d at 522 (citations omitted) (stating that while in most cases the VA disability determination is entitled great weight, the relative weight will vary depending upon factual circumstances of each case).

[58] *See id.* ("ALJs need not give 'great weight' to a VA disability determination if they adequately explain the valid reasons for not doing so."); *see also Allison v. Berryhill*, No. 16-CV-0170-BL, 2018 WL 1274853, at *6 (N.D. Tex. Feb. 16, 2018) (unpublished) ("'An ALJ's disagreement with the VA's finding of disability is not reversible error if the record reflects consideration of that finding.'") (quoting *Duke v. Colvin*, No. 5:16-CV-151-DAE, 2016 WL 6651394, at *5 (W.D. Tex. Nov. 10, 2016) (unpublished)), *R & R adopted,* 2018 WL 1276820 (N.D. Tex. Mar. 9, 2018).

constitute reversible error.[59]    Although the regulations once required ALJ's to consider the disability findings of other agencies and to explain their consideration of those findings,[60] the new SSA regulations, applicable to claims like Plaintiff's filed on or after March 27, 2017, no longer mandate that SSA consider findings of other agencies, nor must they provide an explanation:[61]

> [The Commissioner need not] provide any analysis in [the] determination or decision about a decision made by any other governmental agency or nongovernmental entity about whether [the claimant is] disabled, blind, employable, or entitled to any benefits.

20 C.F.R. § 404.1504 (applicable to all claims filed on or after March 27, 2017).

This amended version of 20 C.F.R. § 404.1504 governs in this case because Gibson filed for disability benefits on September 17, 2017.  Tr. at 288.  Therefore, the ALJ was not obligated to give any weight, or even discuss, the VA disability rating.  Accordingly, the ALJ did not err in failing to reconcile or address the VA's rating.[62]    Claimant's citation to Fifth Circuit precedent involving claims filed before March 2017 (ECF No. 10-3 at 15–16) and thus governed by a different version of the now applicable regulation, therefore, is inapposite.

The Commissioner is not bound by another agency's determination and is not obligated to provide any analysis about that other agency's decision.  The Commissioner will continue to consider "all supporting evidence" underlying the other agency's decision, including medical opinions.  20 C.F.R. 404.1504.  In this case, the ALJ did consider the underlying evidence in support of the VA's determination finding (i.e., medical records).  Accordingly, this claimed error is without merit.

---

[59] *Allison*, 2018 WL 1274853 at *6 (quoting *Rasco v. Berryhill*, No. 4:17-CV-946, 2018 WL 587948, at *4 (S.D. Tex. Jan. 5, 2018) (unpublished)).

[60] *Henson v. Comm'r of Soc. Sec.*, No. 3:20-CV-201-DAS, 2021 WL 3074169, at *2 (N.D. Miss. July 20, 2021).

[61] *Id.* (citing 20 C.F.R. § 404.1504 and 404.1520b(c)(1)).

[62] *See, e.g.*, *Macias v. Saul*, No. EP-20-CV-00145-ATB, 2021 WL 2266171, at *7 (W.D. Tex. June 3, 2021) (rejecting similar argument based on new regulation).

## V.    <u>CONCLUSION</u>

Plaintiff seeks to have this Court reweigh the medical opinions in this case and find legal error where there is none.  The ALJ applied the appropriate legal standards, and substantial evidence supports the ALJ's decision, including his Step 3 and RFC findings.  The ALJ's credibility determinations are entitled to deference, and the record supports his reasons for rejecting certain medical opinions.  Further, under the new regulations applicable to claims filed after March 2017, the ALJ was not obliged to, and thus did not err in failing to, specifically address the VA's disability rating.  Accordingly, Plaintiff's asserted errors are without merit.

## VI.    <u>RECOMMENDATION</u>

For the foregoing reasons,

**IT IS RECOMMENDED** that Claimant's Motion for Summary Judgment (ECF No. 10) be **DENIED** and that Claimant's Complaint be **DISMISSED WITH PREJUDICE.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[63]

New Orleans, Louisiana, this 13th day of October, 2021.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[63] *See* 28 U.S.C. § 636(b)(1)(C); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc). *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).